All right, thank you, you can be seated. All right, I'm ready to begin with the appellate. Your Honor, I'd like to introduce the student arguers. Stephen Braga, from the Appellate Litigation Clinic at the University of India School of Law, would like to introduce you to the court this morning. Two third-year students, Josh Robbins and Brian Ramadino, who will meet the qualifications for practice before this court, and then that will be left to our client, Mr. Piotrowski. Yes, you can. Yes, sir. May it please the Court, my name is Josh Robbins, representing Thomas Matherly. Mr. Matherly is currently confined under a civil commitment order under the Adam Walsh Act. The civil commitment process for Mr. Matherly was initiated 48 minutes after his legal release from the custody of the Bureau of Prisons on November 22, 2006. So how do we know that that timing that's recited in the district court's opinion? On November 22 at 9.20, the BOP released Mr. Matherly from custody, but that was released from legal custody. The district court cites Attachment A, which lists his release for good time credit at 9.20, and then that's corroborated by Attachments B and D, which indicate that at 8 a.m. that morning was his scheduled time for release. We also know that November 23, the next day, Thanksgiving, was initially his calculated last day in custody. That was moved up under 3624 because of the federal holiday. So taken together, that all supports the finding that he was released from his legal custody at the end of his sentence. There's no finding that he was released from legal custody. That would make a big difference if there were. I mean, I've looked at what the district court said. I've looked at the exhibits, including the one on page 44 that says good conduct time release. I don't know what any of that means. Prison, Largo. Well, under the summary judgment standard, all these facts had to be taken in the light most favorable to Mr. Matherly. So it's our position that at that time he had finished serving his sentence. It's not clear from the record that there would be any other reason for him to be held beyond that time. Facts we have to take in the light most favorable to him, but whether or not there was a release to legal custody would seem to be more a conclusion of law. Yes, Judge Agee. Well, since it's the end of his sentence on November 22, there's no evidence in the record that there was another reason to continue holding him beyond his civil commitment under the Adam Walsh Act. Well, that would be true for that day, but we don't know, at least I can't tell from looking at what record there is, exactly what happened at 920 a.m., whether that was indeed intended in the nomenclature of the prison system to be a release from legal custody and he was just hanging out in the lobby waiting for his ride after that, or whether that was simply the start of input into the process as to what was going to happen to him that day. So I guess where I'm going with all that is whether or not we have sufficient facts in the record that enables us to do an appellate review at this time. Sure. Well, Judge, attachments B and D both indicate that at 8 a.m. he was going to be released to his mother. These attachments also indicate that he was traveling back to Virginia, a different state, that he was going to be leaving at that time. And furthermore, the statute lays out the way in which the civil commitment process is to be initiated, which is that the certificate is filed and then that stays the release of the individual from custody while the hearing occurs and the issue is sorted out. But in this case, we have from the district court that he was released at 9.20 and that certificate wasn't filed until 10.08. Well, actually he was released a whole, if you just look at the term released, he was released a whole bunch of times. If I look at his inmate history, he was released then, but also they released for admission change, released for admission change, released for in-transit something facility. I just don't know what those things mean. And I'm curious as to how the district court could know what each one of them means. Again, I think the combination. And there was no hearing, was there? Correct. There was no hearing. He made his decision on the papers just like we're doing. Correct. How can you tell what these things mean? How can he tell? We believe that the combination of the good time release listed at 9.20 along with the other attachments that indicate that this was the end of his sentence, we know that November 22nd was the day he was to be released, and that he was being released to the custody of his mother. He was going to supervise in the Eastern District of Virginia. It appears that there was every intention that he was leaving the Bureau of Prisons and going to another location at that time, but that he was held over for whatever reason for those 48 minutes before the civil commitment papers were filed. Which should have happened prior to 9.20 if his release was to be stayed. Wouldn't we all be in a better position if we sent this back to the district court, had the district court hold a hearing and make findings of fact as to exactly what happened that day? Mr. Matherly has now been in custody for nine additional years beyond the point at which this 2006 date. But having said that, additional review we would also be fine with. The government further makes the point that his custody could have extended until 11.59 that night, or suggests that it could have extended until 11.59 the next day of Thanksgiving. But as this court has previously ruled in Joshua, legal custody is the only test for custody under the Adam Walsh Act. So the combination of his continued physical custody under whatever basis, plus the theoretical ability to hold him until 11.59 that night, those can't be combined together because the physical custody can't count. Furthermore, allowing a test under which the individual could be held until 11.59, the last day of their sentence, creates a series of absurd outcomes. One of which is potentially in this case of Mr. Matherly, where for whatever reason he was held over after the point of his legal release until the papers were filed. Could he be pulled over when he's in the car with his mother or in the parking lot, or taken from his home on Thanksgiving the next day, if there was a reason that he could theoretically have been held until that point? The fact of the matter remains that, as the district court found, he was released at 9.20 on November 22nd. And that was the point at which... In the whole point of this case, though, we know he was released in some sense of the word. But we don't know whether that was release from legal custody, release from physical custody, release from one part of the institution to another part of the institution. And it strikes me that we're supposed to be here on a summary judgment process where there are no disputed material facts, but it sort of looks like there's some fairly significant material facts that we just don't know what they are. Well, we think there's at least certainly enough of a dispute that summary judgment should not have been awarded to the government. But when it comes to physical custody, whether or not he was still in physical custody, as this court found in Joshua, is irrelevant to the determination of whether or not he was in custody for the purposes of the Adam Walsh Act. And again, we believe that the combination of attachments B and D that reveal he was scheduled to be released at 8 a.m., the BOP's own receiving and discharge manual says the individual is to be released by that time. You know, Judge, A.G. has gone with this. When we look at a case like this, what you asked us to do is define as a matter of law that he must have been released at this particular time, 920 to 930, when in fact there are still these questions that loom, at least when we view it in looking at summary judgment from the argument perspective you've given, that it does seem to go where he's gone with this, and that is that why should we make that legal determination when this record is really not developed to the point of giving us information sufficient to say these facts are not disputed? Well, I think if we look at the time that Mr. Matherly has spent, as I said, an additional nine years, this Court in Joshua has already admonished the government once for filing the certificate eight days. That's an equitable argument. It's not fair. He's been in there nine years. Why make him wait longer? That doesn't satisfy the legal standards that we are held to. It's a Havis-type matter. I don't know if he would have brought it earlier. However, he did it. But it's now here before us, and the issue to us is not should we make his life hold for the nine years or whatever, but the issue is whether summary judgment was appropriate here. And what we pointed to, and you seem to agree, there are a number of questions that may loom there that would benefit from the Court taking evidence or making findings. We certainly think there was enough evidence to support Mr. Matherly that the summary judgment wasn't appropriate for the government. But we think the combination of attachments B and D that indicate that this was the point at which he was to be released at the end of his custody was sufficient that at 9-20 was his legal release. I see my time has expired. Any further questions? Thank you. Let's hear from your associate. Yes, sir. I see Mr. Robbins lived through that. So can you. Thank you. Good morning. May it please the Court. My name is Brian Remendino, and I will be arguing the retroactivity issue. This is a case of statutory interpretation. When confining an individual for an indefinite period of time, the government must be sure to comply with all safeguards. These include not only those safeguards built into the statute, such as the custody requirement discussed by Mr. Robbins, but also time-honored principles of statutory interpretation. Among these is the presumption against retroactivity. This canon instructs courts that a statute should not apply retroactively absent a clear indication from Congress that it should do so. In applying this canon, this court asks two questions. First, whether Congress has clearly defined the reach of the statute. And second, whether the statute, as applied to Mr. Mathery in this case, has a retroactive effect. First, Congress has not clearly defined the reach of the confinement provisions within the Adam Walsh Act. The Act states in relevant part that the government may confine an individual as long as they are deemed sexually dangerous and the requirements of the statute are met. The Act, however, does not mention or refer to pre-Act offenders or discuss retroactivity in any way. The lack of a clear statement here is highlighted by a comparison to another statute governing sex offenders. In 42 U.S.C. section 16913, Congress explicitly granted the Attorney General the authority to determine whether or not the registration requirements within that Act would apply to pre-Act offenders. This shows us that Congress, when it seeks to do so, knows how to make the law retroactive. It did not do so here, and the language fails this Court's standard of unambiguous and unequivocal. Therefore, this Court should proceed to the second question, whether the law, as applied to Mr. Mathery in this case, has a retroactive effect. In conducting this analysis, the proper question is whether the law attaches new legal consequences to events completed prior to its enactment. A helpful case here is the United States Supreme Court's decision in St. Cyr. There, the Court addressed whether new amendments to the immigration law that made individuals who had committed certain felonies listed on the statute ineligible for discretionary relief from deportation would apply to Mr. St. Cyr, who had pled guilty to one of the listed offenses prior to the enactment of the law. There, the government argued that the statute did not have a retroactive effect as applied to Mr. St. Cyr because deportation is inherently prospective. That is that it looks to the alien's right to remain in the country in the future and does not focus on past events. Well, in St. Cyr, though, I think is not distinguishable because the passage of the changes in the immigration statute in and of themselves decided the issue, if you met that particular criminal barrier. But here, it's different. You may have a preexisting conviction that fits within the statutory scheme for civil commitment, but there still have to be other findings, contemporary findings, on your capacity to resist impulse and all that sort of stuff that's in the statute. So you've got contemporary findings in this setting that did not exist in St. Cyr. Yes, Judge Agee. However, the fact remains that in order to be subjected to the Adam Walsh Act, an individual must be within the custody of the Bureau of Prisons. This is important because the Act does not reach any sexually dangerous individual on the streets. Mr. Matherly was placed within the custody of the Bureau of Prisons and thus subjected to the Adam Walsh Act when he pled guilty to an offense. Do you have a more of an equal protection argument that's been made and lost before on these issues? No, Your Honor, because when Mr. Matherly pled guilty and subjected himself to the Adam Walsh Act, the consequence of his action was to serve out a sentence handed down by the district judge. Notably, the legal consequences of this action did not include potential confinement under the Adam Walsh Act. Like the court held in St. Cyr, by attaching a new legal consequence to a pre-enactment guilty plea, the government applies the statute retroactively and thus the statute should not apply at all. Well, the conduct that leads to the application of the Adam Walsh Act is not the conduct that put him in prison. Is that correct? Correct. One of the requirements is that the individual have a prior bad act, and that is the act that placed him in prison. So that's part of it. It does not in and of itself because the individual still has to be deemed sexually dangerous. Isn't it really the current status of the individual in terms of his dangerousness the basis for Adam Walsh? Perhaps the focus on Congress was to regulate the dangerousness going forward, but that doesn't change the fact that the analysis here is whether the act attaches new legal consequences to pre-enactment events. And the conclusion there has to be yes because it both attaches legal consequences to the guilty plea that led him to be subjected to the act and to the commission of the prior bad acts that subjected him to the act as well. So whether or not Congress focused on future dangerousness, the fact remains that the act applies new consequences to pre-enactment events, and that is the question that really is at issue in the retroactivity analysis. At least what I'm trying to get at is really his current mental condition. That's the focus. The fact that he's been convicted puts him in a status of those who can be subject to that and the fact that he's being held. I mean, at least in terms of retroactivity, it doesn't seem to me that you're actually punishing him based upon the earlier conduct, but it's because of the current mental state. And is that not something Congress could do in that instance and it wouldn't be retroactive at all? It would just be dealing with his current condition. We still believe that whether or not Congress was focusing on the future dangerousness, the fact remains that it does attach new legal consequences. The analysis that Your Honor is referring to has actually been used in dissent by Justice Scalia in Vardalos where Justice Scalia argued that the immigration concerns were concerns going forward and that's what Congress was focusing, but that didn't stop the court in that case from holding that the law still had a retroactive effect as applied to the individual in that case. So we believe that that is irrelevant to the retroactivity analysis. If there are no further questions, Your Honor, thank you. Thank you. Mr. Lockridge. May it please the Court, my name is Michael Lockridge. I represent the Federal Bureau of Prisons Warden on behalf of the appellee. This Court should affirm the District Court because, one, Matherly was in the BOP's legal custody and subject to civil commitment procedures when the certificate was filed and, two, because neither Matherly's confinement at the time that the certificate was filed nor the District Court's consideration of his pre-enactment conduct rendered the statute retroactive as applied to him. I'll briefly summarize the facts that are important in this case. Is it your position that this action by in terms of filing the etymology could have been done any time that day? Yes, Your Honor, it could have been because the Bureau of Prisons' legal authority, in accordance with this Court's holding in the United States of Joshua, the Bureau of Prisons' legal authority derives from the criminal sentence that was imposed against Matherly. And as computed by the Bureau of Prisons, that sentence did not end until the last day of that sentence was November 22, 2006. Therefore, the BOP maintained legal authority that entire day by operation of the sentence imposed by the sentencing court. So what if, in fact, the prison, let's say they had executed the release, the so-called statement that said he was going to be released, Matherly picked him up, took him home at 8 o'clock in the morning, 9 o'clock he's at home, 12 o'clock that day, he's still in custody? Well, Your Honor, that's a factual scenario that's not present here, and I don't think that the court— But it would fit neatly within what you just said. It didn't matter because he hadn't all day long until 1159. It didn't matter if they actually let him go. They still have legal custody under that scenario. Under that scenario, it would be a hard argument for me to make, Your Honor, but the facts of this case is he was still physically in the BOP's custody. So it's not physical custody, is it? It's not physical custody, but physical custody is relevant here, Your Honor, because in the other cases such as Joshua where the court said that legal custody was a determining factor, the inmate in that case was actually never in the BOP's legal custody. They were always in somebody else's legal custody. Yes, it is. Was there any evidence or any indication what the usual practice of the prison, field of prison was, that someone who had had that good time release done, let's say at 920 or something, in the ordinary course of things, did that person let go? You mean if they're certified, Your Honor? In other words, is this usual, that once you get that 920 to 930 indication that you released, you then put them on an admission-type hold or whatever? No, Your Honor, that is not ordinarily. If they don't have a detainer, then the Bureau of Prison is going to release them. But importantly here, Your Honor, There was no detainer here? There was no detainer. If there was no legal reason to hold them, Your Honor, but importantly here, Your Honor, the BOP never completed its processing of Mr. Matherly for release. Did he have to be in legal custody in order for them to finish that paperwork? Excuse me, Your Honor? Did he have to remain in legal custody in order for the Bureau of Prisons to finish whatever paperwork they needed to do that day? Well, Your Honor, I guess that question hasn't been decided, but the First Circuit Well, isn't the problem with this case, to follow along Judge Wynn's questions, is that when we look at this record, like the exhibit that says he'll be released to his mother at 8 o'clock in the morning, and then this other designation of times at page 44, we don't know what that stuff means. That's correct. This Court does not know what that means because it wasn't How can we conduct appellate review of this decision if we don't know what these missing material facts are? Well, as Mr. Matherly requested in his reply brief to this Court, for this Court to take judicial notice of BOP policy, of the steps for BOP policy that require certain paperwork and documents and steps to be completed for an inmate to be finally released from his prison term, Joint Appendix 59 contains, Joint Appendix page 59 contains an excerpt of BOP policy, and one of the requirements in that excerpt is that a release authorization form be completed, and that form requires an inmate's thumbprint and a releasing officer's signature to complete their release. Now, Mr. Matherly attached at Joint Appendix 50 that release authorization form, and it's not complete, Your Honor. There's no thumbprint. There's no releasing officer's signature. Well, wouldn't all that be a matter of evidence for a district court to take in the first instance and then set out findings of fact, and we could then review that? Well, as you had stated earlier, Your Honor, the district court never made a finding that Mr. Matherly was released from legal custody.  And so the district court's statement that the BOP released Matherly from custody at 920 is not material to its ultimate finding and its legal determination that the government had authority to file their certificate, and the reason for that is because, as mentioned, the required release paperwork was not completed, as Joint Appendix 50 shows. He remained in physical custody, and although the Bureau of Prisons had started the release process, they never completed it. Well, the district court made its finding with respect to release from custody to a limited extent. It addressed that by citing Wetmore, the First Circuit case, which is the one where there was legal custody to 1159 on the last day of incarceration, and clearly that did not physically occur in this case. So if indeed there was a release by the Bureau of Prisons at 920 from legal custody, something we don't know based on this record, then it would not appear that Wetmore would have any application. Well, Your Honor, I think we can infer from the legal conclusion that the district court made that its statement that the BOP released Matherly from custody was not a legal release from custody. Otherwise, we can infer that it wouldn't have made the decision it made. I mean, why don't we just send this back, let the district court have a hearing, you all put on whatever evidence you want to put on, it makes findings of fact, makes legal conclusions, and then we can review it. I think this court, Your Honor, has the authority to affirm the district court's holding on that issue because based on the holding and the First Circuit's holding, if this court finds that the Bureau of Prisons had legal custody the entire day, notwithstanding the record at the district court, then I think this court could affirm the district court's holding on that issue. Moving on to the second issue of retroactivity, the district court's conclusion that Matherly was properly subject to commitment under 4248 is consistent with the Supreme Court's retroactivity jurisprudence. The Supreme Court has held that a statute's operation can draw upon antecedent facts without implicating retroactivity concerns if the statute authorizes sanctions to address post-enactment dangers. The Supreme Court in Kansas v. Hendricks has addressed a very similar state statute, the Kansas statute, which provided for civil commitment of persons based on a mental illness and a finding that they had a risk of future danger to the public. The Supreme Court in that case held that civil commitment clearly was not retroactive. That statute clearly was not retroactive. More recently, in Vartalis v. Holder, that's a 2012 decision, the Supreme Court held that statutes that prohibit convicted sex offenders from working with children and statutes that prohibit persons who have been committed to a mental health facility from purchasing guns do not operate retroactively because they as well address dangers that arise post-enactment. Under 4248, 4248 does just exactly that. In order for a person to be civilly committed, the government must prove that he's engaged in or attempted to engage in sexually violent conduct or child molestation but also that he currently suffers from a mental illness and would pose a danger if released. Like the non-retroactive civil commitment statute at issue in Hendricks and the statutes mentioned in Vartalis, 4248, for the same reasons, is not retroactive. And as this Court held in United States v. Comstock, 4248 allows the use of prior act evidence for legitimate evidentiary purpose, as I believe Judge Winn mentioned earlier, to support a finding of a mental illness and based on the future dangerousness, not based on any prior past conduct that the person may have engaged in. And for these reasons, 4248 is not retroactive, and the District Court should be affirmed on that issue as well. Any courts disagreed with what you just said? None that I've located, Your Honor. I haven't located any courts that disagree on this issue. Counsel for Matherly has addressed some cases that pertain to immigration statutes and immigration laws that are not relevant to this analysis, this issue. Unless there's any further questions, I appreciate your time. Thank you. Thank you, Mr. Lockridge. Mr. Robbins? Thank you, Judge. Thank you, Judge. Just a few points. First of all, if the Court does still have such open questions about these documents, summary judgment was at least inappropriate for the government. Furthermore, when it comes to whether or not Mr. Matherly could have been held that entire day, the government's distinguishing between the more absurd hypotheticals of him having been released with the one we have here because he was still in physical custody. But as we know from the United States v. Joshua, the physical custody cannot matter because it makes the statute both over- and under-inclusive. Furthermore, Section 3624, 18 U.S.C. 3624, is the release statute. It says that the prisoner shall be released on their last day of confinement, but it doesn't specify a time. And in this case, the receiving and discharge manual indicates that the prisoner is supposed to be released at the time that's scheduled, which in this case was 8 a.m. and the district court found to be 9.20. And finally, the government did indicate that there was no legal basis, no detainer to further hold Mr. Matherly after the point at which his sentence has expired and he would have been released. Legal release must logically precede his physical release from the actual building. I've got a question I want to ask about retroactivity. Do you want to take that or do you want your colleague to come up? Mr. Ramadino. I'm just curious. If the law said any inmate with bubonic plague, which we presume we have no cure, no prisoner who has bubonic plague can be released without, you know, shall be sent to a treatment facility and not released to the general public, would your argument be the same on retroactivity? Yes, Your Honor, because it would still attach a new legal consequence. It's not punishment. It may depend. Well, the court in St. Cyr explicitly said deportation is not punishment, so the court there said the law was not applying punishment to a past event. So that is not necessarily relevant. I lost my train of thought. I apologize. That's okay. Can you rephrase the question? Judge Wynn will probably do a better job of rephrasing it. I think the Chief's question is a good question, but is it not relevant that bubonic plague would have no relevance to what he was convicted of? For in this case, what he's been dealing with is exactly the kind of conduct he's been convicted of, so it's inextricable. Anybody, the law could say, not just prison people, but anybody with bubonic plague could be confined probably under the law. Is that not probably the distinction I'm thinking? I think there are examples, though, of where he's going with this. I'm not sure that fits. Thank you, Judge Wynn. That is a great distinction. And the court is certainly willing to use that. There's also potentially another distinction. The court in St. Cyr and later in Bartolus and this court in Jokuri placed emphasis on the fact that the individuals in those cases pled guilty. So perhaps your hypothetical would depend on whether or not the individual had pled guilty to the offense, because if the law was enacted, it would still be attaching a new disability to a past guilty plea. Thank you. If there are no questions. Let me ask one question and ask, there is no case that supports your position in terms of retroactivity directly, not immigration or the other case? Yes, Your Honor, that is correct. However, we would also maintain that there is no case that directly addresses this case with the reverse outcome. Well, no binding case. Well, the Ninth Circuit case that the government has filed in supplement to its brief addressed a separate provision of the Adam Walsh Act, not the provision that has been applied to Mr. Matherie in this case. Thank you. Thank you. All right. We'll come down and recouncil and then take a short 5-10 minute break.
judges: William B. Traxler Jr., G. Steven Agee, James A. Wynn Jr.